IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KEITH W.R. LOWE,

    Plaintiff,

v.                                          Case No. 2:17-cv-03929

DAVID BALLARD, et al.,

    Defendants.

MEMORANDUM OPINION AND ORDER

This matter is presently referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge, for pre-trial management and submission of proposed findings and recommendation for disposition. For reasons appearing to the court, the referral to the magistrate judge is **WITHDRAWN** and the undersigned will proceed to rule on all pending motions. Pending before the court is a Motion for Summary Judgment filed by defendants Ronnie Williams, Sgt. Slack, Lt. Berry, and Capt. Toney [ECF No. 122]. For the reasons explained herein, it is hereby **ORDERED** that the motion is **GRANTED in part** and **DENIED in part**.

I.    Background

This matter is proceeding on the plaintiff, Keith W.R. Lowe's (hereinafter "Lowe") Amended Complaint [ECF No. 34] alleging that, on July 21, 2017, defendant Ronnie Williams ("Williams") pepper sprayed him, without provocation or justification, while he was confined in his segregation cell at the Mount Olive

Correctional Complex ("MOCC"), and that Williams and Lt. Berry ("Berry") subsequently slammed his head into a wall when they escorted him to the recreation yard to be decontaminated. Lowe claims that the defendants' conduct violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution (Counts I and II) and constituted assault and battery (Count IV) and intentional infliction of emotional distress under state law (Count V).[1]

On June 5, 2020, following a discovery period, Williams, Berry, Slack, and Toney filed the instant Motion for Summary Judgment [ECF No. 122] and a Memorandum of Law in support thereof [ECF No. 123]. In support of their motion, the defendants offer the following exhibits: the affidavit of Ronnie Williams; a memorandum outlining the plan for Lowe's July 21, 2017 cell extraction; incident reports; five video segments recorded during and after the incidents in question; and discovery responses and excerpts from Lowe's deposition in prior litigation in which Lowe acknowledges his prior military training and his history of violent actions and an escape attempt while at MOCC. [ECF No. 122, Ex. A-E].

On June 22, 2020, Lowe filed a response to the defendants' motion for summary judgment [ECF No. 127], including his own affidavit and a number of other exhibits consisting of incident reports, medical and mental health records, pictures of his alleged injuries, the relevant policy and procedures for opening cell doors, and safety data sheets and labels concerning the pepper spray that was used. [ECF No. 127, Exs. A-N].

---

[1] Count III of the Amended Complaint alleges a claim of supervisory liability against other defendants. That claim will be addressed in a separate Memorandum Opinion and Order filed contemporaneously herein.

The parties agree that, on July 21, 2017, Williams deployed almost a full 16-ounce cannister of Sabre Phantom MK-9 Oleoresin Capsicum (hereinafter "pepper spray") into Lowe's segregation cell that day, but the circumstances surrounding this incident are otherwise largely disputed.

### A. *Lowe's version of the events*

According to Lowe, around 8:30 p.m. on July 21, 2017, he was sitting on the toilet in his cell listening to music with earbuds when he was startled by his cell door opening. Lowe claims that the cell door only opened a few inches and that, when he went towards the door to see what was happening, he was immediately pepper sprayed by Williams without provocation or reason. Lowe claims that Williams repeatedly sprayed him, using a total of 13 ounces of pepper spray, despite the fact that Lowe was already "blinded and incapacitated." Lowe further claims that, only after using such force, did Williams order him to cuff up for removal from his cell, and that he immediately complied with Williams' direction. He further disputes that he had wedged any paper into the door jamb of his cell to prevent the door from opening.

Lowe claims that the available video evidence does not capture the interactions leading up to and including Williams' deployment of pepper spray and that the defendants' version of events is not supported by the time frame set forth in the video evidence. Lowe further specifically disputes the veracity and consistency of the incident reports and affidavits presented by the defendants and questions why the defendants would violate established policies and procedures for opening cell doors if he posed the security threat alleged by the defendants. In sum, he disputes the need

for the use of any force against him and additionally asserts that the amount of pepper spray that was used was excessive.

Lowe was subsequently escorted by Williams and Berry to the recreation yard so that he could be decontaminated and medically assessed. Lowe's Amended Complaint claims that, when they arrived in the recreation yard, Williams and Berry "pushed [him] against the wall face first bouncing his forehead off the wall." [ECF No. 34 at 3]. However, Lowe's response to the defendants' motion for summary judgment does not appear to address this claim. [ECF No. 127].

B. *Defendants' version of events*

The defendants' motion documents assert that Lowe's cell extraction on July 21, 2017 was a special operation executed by West Virginia Division of Corrections' ("WVDOC") Central Office officials targeted at retrieving a cellular phone kept by Lowe in his cell. Correctional staff had acquired intelligence demonstrating that Lowe was using the phone to communicate with a female inmate at the Southwestern Regional Jail.

The defendants contend that prior searches of Lowe's cell on June 21, 2017 and July 6, 2017 led to the discovery of other contraband, including flash drives containing by-laws for a white supremacist prison gang, a six-inch folding knife, and a drill bit, believed to be a tool to tamper with doors and locks. However, correctional staff were unable to locate the cell phone during those searches. Consequently, Williams, the WVDOC's Chief of Special Operations, was asked to coordinate a cell extraction to obtain the phone from Lowe.

On the day in question, Williams and Berry parked and walked through the main gate at shift change dressed in the same uniforms as those worn by pod officers during their regular shifts, so as not to alert Lowe to their presence at the prison. Williams contends that Lowe had defeated prior attempts to search his cell by covering his cell window and refusing to immediately comply with cuffing procedures to buy time to conceal the phone. Thus, Williams put together an extraction team of seven officers (including himself), armed with pepper spray and other munitions, and made the tactical decision that Lowe's cell would be immediately opened and he would be ordered to immediately show his hands and cuff up. If Lowe failed to comply, then the munitions, beginning with the pepper spray, would be deployed to gain his compliance.

The defendants assert that the video evidence of the cell extraction and their incident reports demonstrate that the force used against Lowe, a former special forces officer, with a murder conviction, a history of violent and volatile conduct, and an escape attempt while at MOCC, was reasonable under the circumstances, and was done in a good faith effort to restore order in the prison unit. Their motion documents claim that Williams, Berry, and Slack entered the cell block first, while the other members of the extraction team remained in the roundabout area outside Lowe's cell block to avoid arousing the suspicion of all of the inmates. Upon arrival at Lowe's cell, Williams directed that Lowe's cell door be unlocked and opened by the tower officer. However, Lowe's door jammed after only opening a few inches, and his cell window was allegedly covered. The defendants further claim that Williams gave

5

Lowe loud, clear, and direct orders to come to the opening and cuff up in order to be removed from the cell. They further claim that Lowe failed to comply with these orders and was observed near the back of his cell and was believed to be in the process of concealing the cell phone they were seeking to find. Thus, Williams deployed pepper spray into Lowe's cell in an effort to get him to comply with his orders and to keep him from secreting away or destroying evidence.

### C. *The relevant video evidence*

Although another correctional officer, Trevor Anderson (who is not a defendant herein), was assigned to video record the interactions with Lowe using a hand-held camera, Anderson did not initially enter Lowe's pod with Williams and the other two officers, and, by the time he entered the pod and approached the area of Lowe's cell, it appears that Williams had already deployed the pepper spray. Williams can be heard directing Lowe to put his hands through the food tray slot, which had been opened, to be cuffed and brought out of his cell. Lowe complied with that order after a few seconds. However, there is no useful video evidence of the interactions between Lowe and Williams or the other officers leading up to or during the use of the pepper spray.

Subsequent to the cell extraction, Lowe is escorted to the recreation yard by Williams and Berry. As they arrive in the recreation yard, they place Lowe face first up against the wall to add leg shackles. While it appears that Lowe was startled when he hit the wall, there is nothing in the video evidence that demonstrates that his face was slammed against the wall in a malicious or sadistic manner. The

remaining video evidence consists of recordings of the decontamination process and Lowe sitting in a common office area awaiting return to his cell.

During that time, Lowe's cell was searched and, although other items of contraband, including drug paraphernalia and a cell phone battery were found, the intact cell phone they were seeking was not located. At some point during these interactions, Lowe admits that he possessed the cell phone and pulls it from his boxer shorts. Additional video evidence demonstrates that paper was found inside the door jamb of Lowe's cell, which was believed to have been placed there by Lowe to impede the opening of his door.

## II. Standard of Review

To obtain summary judgment, the moving party must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). A court considering a motion for summary judgment does not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, the court draws any permissible inferences from the facts in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that

version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion

#### A. *Lowe's claims against Slack and Toney*

Lowe's Amended Complaint fails to allege any specific factual allegations concerning conduct by defendants Slack and Toney. Rather, throughout the Amended Complaint, Lowe simply refers collectively to "Defendants," but only specifically describes the conduct of Williams and Berry (and with Berry, he only includes facts concerning the conduct on the recreation yard). Thus, the Amended Complaint fails to state a sufficient claim for relief against Slack and Toney.

In his response to the motion for summary judgment, Lowe attempts, for the first time, to argue that Berry, Slack, and Toney should be held liable under the Eighth Amendment because they failed to intervene in an attempt to prevent Williams from violating his constitutional rights in the course of the cell extraction. However, a party may not amend or add additional claims through a response to a dispositive motion. *See Southern Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184-85 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy"). Accordingly, I **FIND** that Lowe's Amended Complaint fails to sufficiently state any claim for relief against Slack and Toney and that those defendants are entitled to judgment as a matter of law on all of Lowe's claims for relief.

### B. Lowe's Eighth Amendment (Count I) and assault and battery (Count IV) claims against Williams arising out of use of pepper spray

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain on prisoners. *Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013).[2] To succeed on an Eighth Amendment claim, the plaintiff must establish that "the prison official acted with a sufficiently culpable state of mind (subjective component)" and that "the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).

The subjective component requires a showing that the prison official acted "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). The Supreme Court has identified four factors that must be weighed in making this determination: (1) the need for application of force; (2) the relationship between the need and the amount of force that was used; (3) the threat reasonably perceived by the responsible official; and (4) any efforts made to temper the severity of a forceful

---

[2] The court construes Lowe's citation to the Fourteenth Amendment to be merely referencing the Fourteenth Amendment's incorporation of the United States Constitution's Bill of Rights unto the states. However, if Lowe intended to raise a separate claim under the due process clause of the Fourteenth Amendment, the law is well-settled that, where a claim for relief is governed by a more specific protection, such as that of the Eighth Amendment's guarantee against cruel and unusual punishment, "the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). In *Graham*, the Supreme Court held that where an explicit textual source of constitutional protection applies to physically intrusive government conduct, "that Amendment, not the more generalized notion of 'substantive due process,'" must be the guidepost for analyzing the claim. 490 U.S. at 395. Here, Lowe's claim, if any, is appropriately addressed under the Eighth Amendment's prohibition on cruel and unusual punishment.

9

response. *Whitley*, 475 U.S. at 321; *see also Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996). The objective component, on the other hand, is "contextual and responsive to contemporary standards of decency," and is always satisfied "[w]hen prison officials maliciously and sadistically use force to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 8-9, 112 (1992) (internal quotation marks omitted).

It is well-established that prison officials violate the Eighth Amendment by using "mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (internal quotation marks omitted); *see also Iko*, 535 F.3d at 239-40 (finding use of pepper spray during cell extraction of nonconfrontational inmate constituted excessive force); *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (finding genuine issues of material fact concerning several bursts of pepper spray used on an allegedly docile inmate). This court is consistently confronted with disputes of fact concerning the deployment of pepper spray against segregated inmates at MOCC because the material interactions between staff and inmates are frequently not recorded. I remain puzzled by the WVDOC's failure to require recording of all interactions between staff and inmates, either through body cameras placed on correctional staff, or stationary cameras placed on prison pods, to promote transparency and to avoid unnecessary expenses in litigation.[3]

Even in this matter, where some video evidence was developed (some of which is of poor quality), the crucial interactions between Lowe and Williams were not

---

[3] Lowe maintains that there were stationary cameras on his cell block but, during discovery, he was advised that no such video footage exists.

recorded and the court is left to weigh the credibility of the parties' competing statements in incident reports and affidavits, which is impermissible at the summary judgment stage. *See Greene v. Feaster*, No. 19-6359, 775 F. App'x 90 (4th Cir. Aug. 16, 2019) (vacating grant of summary judgment because there was no direct video evidence to support blatant contradiction of plaintiff's version of disputed facts). Taking the evidence in the light most favorable to Lowe, a reasonable jury could make a reliable inference of wantonness in the infliction of pain. Accordingly, I **FIND** that there are genuine issues of material fact concerning the need for and amount of the force used by Ronnie Williams in this matter and, thus, Williams is not entitled to judgment as a matter of law on Lowe's Eighth Amendment claim concerning the deployment of pepper spray on July 21, 2017.

Likewise, because Lowe's state-law claim for assault and battery concerning Williams' deployment of pepper spray against him arises out of the same disputed facts, I **FIND** that summary judgment on that claim is also inappropriate. In West Virginia, a person is liable for battery if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 776 (S.D. W. Va. 2015) (quoting Restatement (Second) of Torts § 13 (1965)). A person is liable for assault if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *Id.*

11

An activity, however, that would otherwise subject a person to liability in tort for battery or assault does not constitute tortious conduct if the actor is privileged to engage in such conduct. *Hutchinson v. West Virginia State Police*, 731 F.Supp.2d 521, 547 (S.D. W. Va. 2010) (citation omitted). "A privilege may be based upon . . . the fact that its exercise is necessary for the protection of some interest . . . of the public which is of such importance as to justify the harm caused or threatened by its exercise." Restatement (Second) of Torts § 10 (Am. Law Inst. 1965).

Construing the evidence in a light most favorable to Lowe, I **FIND** that a jury could reasonably determine that Williams used excessive force by deploying pepper spray. If Williams' use of pepper spray is determined to be excessive, then a jury could also find that Williams' conduct was offensive and harmful, reasonably precluding a finding of privilege as to Lowe's battery and assault claims. Therefore, Williams is, likewise, not entitled to judgment as a matter of law on Lowe's assault and battery claim in Count IV arising out of the pepper spray incident.

> C. *Lowe's Eighth Amendment (Count II) and Assault and Battery (Count IV) Claims Against Williams and Berry for Use of Force on the Recreation Yard*

Lowe's Amended Complaint asserts additional Eighth Amendment and assault and battery claims against defendants Williams and Berry because they allegedly slammed Lowe's face and forehead into the recreation yard wall. However, upon review of the video evidence of that incident, I **FIND** that Lowe's version of that event is blatantly contradicted by the record. Upon delivering Lowe to the recreation yard, Williams and Berry place Lowe up against the wall, face first, and Lowe appeared to

be somewhat startled when his face touched the wall. However, the video evidence fails to demonstrate that Lowe was slammed into the wall or that the force used could be considered objectively unreasonable or offensive and harmful.

Therefore, Lowe has failed to demonstrate a violation of his Eighth Amendment rights or state law on this basis. Accordingly, I **FIND** that defendants Williams and Berry are entitled to judgment as a matter of law on Counts II and IV of Lowe's Amended Complaint with respect to their conduct on the recreation yard.

D.   *Lowe's intentional infliction of emotional distress claim (Count V)*

In Count V of his Amended Complaint, Lowe alleges that the defendants' conduct[4] amounted to the intentional infliction of emotional distress ("IIED"). West Virginia law recognizes such a tort, which is also known as the "tort of outrage." To prevail on an IIED claim under West Virginia law, a plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Miller v. Rubenstein*, No. 2:16-cv-05637, 2018 WL 736044, at *16-17 (S. D. W. Va. Feb. 6, 2018). These elements present a high bar to recovery. *See Courtney v. Courtney*, 186 W.Va. 597, 413 S.E.2d 418, 423 (1991) ("conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent

---

[4] It is unclear against whom Lowe is asserting this claim. He specifically mentions Williams and discusses the pepper spray and recreation yard incidents. However, he further refers to "Defendants" in this count. The undersigned construes this claim to be brought only against Williams and Berry.

13

does not constitute outrageous conduct."). In analyzing the first factor, a court can "consider whether the extreme and outrageous character of the conduct arose from an abuse by the defendant of a position or relationship to the plaintiff, which gave the defendant actual or apparent authority over the plaintiff or power to affect the plaintiff's interests." *Travis v. Alcon Labs.*, Inc., 202 W.Va. 369, 504 S.E.2d 419, 421 (1998).

In West Virginia, an IIED claim which is duplicitous with an assault and battery claim cannot go forward. *See Criss v. Criss*, 356 S.E.2d 620 (W. Va. 1987) ("[I]f a jury finds that the proof sustains the appellant's complaint, she will be able to recover compensatory and punitive damages against the appellee as a result of the assault and battery, including elements of emotional distress. Therefore, it would be inappropriate to allow her to also recover damages based on the tort of IIED."). IIED "was conceived as a remedy for tortious conduct where no remedy previously existed." *Compton v. O'Bryan*, No. 2:16-CV-09298, 2018 WL 813443, at *5 (S.D. W. Va. Feb. 9, 2018). And at "the outset of a case, an assault claim encompasses claims for IIED arising out of the assault, such that a plaintiff may present his claim for intentional infliction of emotional distress as a part of his assault claim." *Id.*

Here, the facts giving rise to Lowe's IIED claim are the same facts supporting his assault and battery claim. Thus, he is barred from pursuing a double recovery for such alleged emotional injuries. Moreover, Lowe has not alleged actions that are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized

14

community." *Tomashek v. Raleigh Cty. Emergency Operating Ctr.*, No. 2:17-CV-01904, 2018 WL 502752, at *4-5 (S.D. W. Va. Jan. 22, 2018). Thus, he has failed to establish a genuine issue of material fact and the defendants are entitled to judgment as a matter of law on Lowe's IIED claim.

### IV. Conclusion

For the reasons stated herein, it is hereby **ORDERED** that the Motion for Summary Judgment filed by defendants Williams, Berry, Slack, and Toney [ECF No. 122] is **GRANTED IN PART**, with respect to Lowe's Eight Amendment and assault and battery claims against Williams and Berry in Counts II and IV (concerning the recreation yard incident), Lowe's intentional infliction of emotional distress claim in Count V, and any and all claims against Slack and Toney. However, it is further **ORDERED** that the motion is **DENIED IN PART** with respect to the Eighth Amendment and assault and battery claims against Williams in Counts I and IV (concerning the pepper spray incident during the cell extraction). A separate Order will follow concerning additional proceedings on these remaining claims.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: September 9, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE